### THE HENDRICK HUDSON.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 135.

1. WHARVES (§ 20*)—INJURIES TO VESSELS—LIABILITY OF OWNER OF ABANDONED PIER.

The owner of a pier, which has been out of use for 50 years and is in such a state of dilapidation and decay as to indicate to all navigators that it is an unsafe place to moor a vessel, cannot be held liable for an injury to a vessel so moored from a sunken spile.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 35–43; Dec. Dig. § 20.*]

2. SHIPPING (§ 81*)—LIABILITY OF VESSELS—INJURY TO OTHER VESSEL BY SWELL.

A steamer, navigating the Hudson river at ordinary speed, is not liable for an injury caused by her displacement waves to a derrick scow, which was moored in a dangerous place above a sunken spile.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 341, 344, 345, 347; Dec. Dig. § 81.*

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit in admiralty by the Merritt & Chapman Derrick & Wrecking Company against the steamer Hendrick Hudson (the Hudson River Day Line, claimant) and the Erie Railroad Company. Decree for both respondents, and libelant appeals. Affirmed.

Foley & Martin, of New York City (William J. Martin and Frank A. Spencer, Jr., both of New York City, of counsel), for appellant.

Wilcox & Green, of New York City (Herbert Green, of New York City, of counsel), for appellee Erie Railroad Company.

Olcott, Gruber, Bonynge & McManus, of New York City (William M. K. Olcott and T. B. Chancellor, both of New York City, of counsel), for appellee Hudson River Day Line.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. This action was brought to recover damages sustained by the libelant's derrick scow Alfred on or about September 23, 1907. The charge of negligence against the Erie Railroad Company is that it provided a dangerous and unsafe berth for the Alfred

while at work in the Hudson river at Piermont, about opposite Irvington, N. Y. The charge against the Hendrick Hudson is that by proceeding at a reckless rate of speed she caused displacement waves, one of which lifted the Alfred and carried her forward so that when the wave receded she was impaled on a sunken spile.

The Alfred was not a trespasser; she was lawfully at Piermont to assist in raising a number of sunken barges which had been sold by the railroad company to one Briggs and had been left at the inshore, southerly, end of the pier, which extends practically at right angles from the western bank nearly a mile into the river. On the day of the accident the Alfred had made fast to the pier near its eastern end and was in this position when she was injured.

The pier at Piermont was once a busy trade center. When first constructed, the Erie Railroad, or its predecessor, landed passengers to and from New York at this point. Afterwards it was used for freight and its last use by the company was as a storage place for coal. It was built in 1841 and has not been used as a pier since 1862. It had been openly and notoriously out of commission as a pier for half a century. The railroad company was not called upon to advertise a fact which every riverman knew, or should have known. The condition of the pier was visible to all. The photographs introduced in evidence show such a condition of dangerous dilapidation that no prudent navigator would think of tying up there. The condition above the water indicated the probable condition below the water in the immediate vicinity of the pier. No signs or notices placed on the pier could add to the information which the pier itself imparted. If a pinnacle rock rises ten feet above the surface of the water in a navigable river, a notice placed thereon saying "This rock is dangerous" would seem to be superfluous. So a similar notice on the pier would only have stated less emphatically what was made manifest by a mile of ruin and decay.

The Hudson was going at ordinary speed and her waves were no larger than ordinary and would not have injured the Alfred if she had been lying in a proper place. Vessels navigating the river are not obliged to look out for a barge that is anchored over a sunken spile.

The decree is affirmed with costs in favor of both appellees.